# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

MELISSA RENE JONES,                )
                                   )
            Plaintiff,             )
                                   )
v.                                 )    Case No. CIV-15-135-RAW-KEW
                                   )
CAROLYN W. COLVIN, Acting          )
Commissioner of Social             )
Security Administration,           )
                                   )
            Defendant.             )

## REPORT AND RECOMMENDATION

Plaintiff Melissa Rene Jones (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on November 22, 1960 and was 52 years old at the time of the ALJ's decision. Claimant obtained her GED. Claimant has worked in the past as a job development specialist and receptionist. Claimant alleges an inability to work beginning January 1, 2007 due to limitations resulting from bipolar disorder, depression, anxiety, degenerative disc disease, and arthritis.

**Procedural History**

On January 10, 2012, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On May 10, 2013, an administrative hearing was conducted by Administrative Law Judge ("ALJ") James Stewart in Tulsa, Oklahoma. The ALJ entered an unfavorable decision on August 30, 2013. The Appeals Council denied review on February 13, 2015. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform less than a full range of medium work with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in failing to properly evaluate and provide supported reasons for discounting Claimant's treating psychiatrist and agency examining psychologist.

**Evaluation of Opinion Evidence**

4

In his decision, the ALJ determined Claimant suffered from the severe impairments of degenerative disc disease, arthritis of the left hand and right foot, peptic ulcer, depression, and anxiety. (Tr. 15). The ALJ concluded that Claimant retained the RFC to perform less than a full range of medium work. In so finding, the ALJ determined Claimant could lift no more than 50 pounds at a time with frequent lifting/carrying of up to 25 pounds. Claimant could push or pull with the upper or lower extremities consistent with the limitations on lifting and carrying. Claimant could stand or walk for six hours in an eight hour workday and can sit for two hours in an eight hour workday or for long periods in a job that does not require a full six hours of standing or walking. Claimant was also limited by the ALJ to jobs that do not require contact with the public and only require that the person understand, remember, and carry out simple instructions. Claimant could perform only unskilled work consisting of simple and routine tasks. (Tr. 17).

After consultation with a vocational expert, the ALJ found Claimant retained the RFC to perform the representative jobs of hand packager, hand launderer, and hospital cleaner, all of which the ALJ found to exist in sufficient numbers both regionally and nationally. (Tr. 22). As a result, the ALJ found Claimant was not

disabled from January 10, 2012 through the date last insured of December 31, 2012. (Tr. 23).

Claimant contends the ALJ failed to properly evaluate and give supportable reasons for rejecting the opinions of her treating psychiatrist and the agency's examining psychologist. Beginning in 2009, Claimant was treated monthly for her mental conditions by Dr. Julia K. Warnock, a Board Certified psychiatrist. On February 14, 2012, Dr. Warnock provided a mental medical source statement on Claimant's conditions. She found Claimant suffered from a mood disorder with a GAF of 65. She stated Claimant had a "fair response to mood stabilizers and anti depressants." Her clinical findings included Claimant's low energy, racing thoughts, and low mood. Her prognosis was "fair." (Tr. 279).

Dr. Warnock noted Claimant's signs and symptoms included decreased energy feelings of guilt or worthlessness, mood disturbance, difficulty thinking or concentrating, emotional lability, and easy distractibility. (Tr. 280). In regard to Claimant's functional abilities, Dr. Warnock found she was unable to meet competitive standards in the areas of maintaining attention for two hour segments, completing a normal workday and workweek without interruptions from psychologically based symptoms, dealing with normal work stress, understanding and remembering detailed

instructions, carrying out detailed instructions, and setting realistic goals or making plans independently of others. (Tr. 281-82). Claimant was considered "seriously limited, but not precluded" in eleven additional functional areas, including sustaining an ordinary routing without special supervision, working in coordination with or proximity to others without being unduly distracted, making simple work-related decisions, asking simple questions or requesting assistance, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, responding appropriately to changes in a routine work setting, dealing with stress of semi-skilled and skilled work, interacting appropriately with the general public, maintaining socially appropriate behavior, and traveling in unfamiliar places. Id.

Dr. Warnock also found Claimant would on average be absent from work about three days per month due to her conditions. She noted Claimant had difficulty concentrating. (Tr. 283).

On April 17, 2012, Dr. Johna Kay Smasal, a consultative licensed clinical psychologist, examined Claimant and issued a report of her findings. Dr. Smasal also found Claimant suffered from a mood disorder, concluding Claimant "is unlikely to be

7

capable to sustain attention, concentration, memory consolidation, adapting and in general persistence in an 8-hour workday." (Tr. 438).

Several issues concern this Court with the manner in which the ALJ considered these opinions. The ALJ recited the findings of Drs. Warnock and Smasal then found that they formed the basis for his decision to lower the state agency's mental RFC to a finding of simple, unskilled work. (Tr. 20). This finding is incongruent with the opinions themselves since both professionals found Claimant could not perform simple, unskilled work. The ALJ fails to explain the foundation for his statement.

The ALJ then found the opinions to be "not entirely credible", although nothing in the regulations and case authority allows the ALJ to consider a credibility determination on medical professionals - their opinions are either supported by the substantial evidence and their clinical findings or they are not.

His basis for his "credibility finding" included (1) Dr. Warnock did not define "unskilled work"; (2) Dr. Warnock's form utilized a vocational term in stating Claimant was "unable to meet competitive standards" rather than an alternative functional term; (3) Dr. Warnock found Claimant to have a GAF of 65 which was inconsistent with a finding of an inability to work; and (4) Dr.

8

Warnock's findings regarding Claimant's chronic pain were based upon Claimant's subjective statements. (Tr. 20).

With regard to Dr. Smasal's report, the ALJ found her findings to be internally inconsistent since she stated Claimant could not sustain an eight hour workday while finding normal cognitive testing. She also determined Claimant's pain was a contributor to her depression "[w]ithout any real evidence of pain." (Tr. 21).

The ALJ is required to consider every medical opinion in reaching his assessment and must provide specific, legitimate reasons for rejecting an opinion. Doyal v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003). In this instance, Dr. Warnock was a Board Certified psychiatrist with an extensive treatment record with Claimant. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific,

legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

It is entirely unclear the weight or extent of consideration was given to Dr. Warnock's opinion by the ALJ. He interpreted Dr. Warnock's medical source statement to somehow limit Claimant to unskilled work when he subsequently finds in his decision that the term "unskilled work" is undefined on Dr. Warnock's form. The use of a vocational term should not entirely preclude consideration of a treating physician's opinion. Given the plethora of forms existing in the Social Security disability arena, it is the ALJ's obligation to attempt to reconcile the differing terms by further developing the record and inquire of the treating physician of the intent and meaning rather than merely criticize the form and reject the physician's findings altogether. Moreover, the form itself defines the vocational term of "unable to meet competitive standards" as "cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting." (Tr. 281). This definition should have been sufficient for the ALJ to interpret the findings. Additionally, since these were mental evaluations, it was not unreasonable for Dr. Warnock and Dr. Smasal to rely upon Claimant's subjective statements of pain without making further clinical

medical examinations or findings.  Certainly, the adoption of such subjective statements should not invalidate the totality of the opinions.  Dr. Warnock's GAF finding should not preclude consideration of his other functional limitations.  Given Dr. Warnock's longitudinal record of treatment, the ALJ's consideration of his opinion was inadequate.  On remand, the ALJ shall reassess Dr. Warnock's and Dr. Smasal's opinions and set forth specific, legitimate findings should he reject them in part or in whole.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied.  Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.  The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief.  Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 8th day of August, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE